IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KENDRICK GILLUM                                                    PETITIONER
ADC #110651

V.                            NO. 5:06cv00064 JLH-JWC

LARRY NORRIS, Director,                                            RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Kendrick Gillum,[1] an Arkansas Department of Correction inmate, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, along with a supporting brief and an amendment (docket entries #2, #3, #15). Respondent concedes that Petitioner is in his custody and has exhausted all nonfutile state remedies, *see id.* § 2254(a) & (b), but asserts that the petition should be dismissed for other reasons (docket entries #7, #16). Petitioner has replied (docket entries #10, #11, #17, #19). For the reasons that follow, the petition should be **dismissed** in its entirety.

---

[1] Petitioner's first name is alternately spelled "Kendrick" and "Kendric." The spelling in the caption of his petition has been used in this recommendation.

2

I.

Background

On February 1, 1997, Charles Newsome and Frederick Ellis were driving past an apartment building in West Memphis, Arkansas, when gunfire erupted.  Newsome, the driver, was shot in the back and arm, and he bled to death from his injuries.  Ellis, the passenger, testified at trial that he saw Petitioner and two others standing in the area from where the shots were coming, and that two of them had handguns.  Another witness testified that he heard shots and saw Petitioner and three others standing there, one of them with a rifle, and another witness testified that he saw three men shooting at the victim's car.  Police officers found twenty-six shell casings at the scene and five bullet holes in the victim's car.  Ellis testified that Petitioner and the victim had argued one week earlier, and two other witnesses testified that Petitioner had told them about participating in the shooting.  (Resp't Ex. B, at 31-291.)[2]  *See also Gillum, et al. v. State*, 992 S.W.2d 89 (Ark. 1999) (Resp't Ex. D).

Following a jury trial in November 1997 in the Circuit Court of Crittenden County, Arkansas, Petitioner was convicted of capital murder and was sentenced to life imprisonment without possibility of parole.  (Resp't Ex. A.)  He appealed, and the Arkansas Supreme Court affirmed on June 17, 1999.  *Gillum*, *supra* (Resp't Ex. B, C, D).

On August 5, 1999, Petitioner filed in the Crittenden County Circuit Court a timely petition for state post-conviction relief pursuant to Ark. R. Crim. P. 37.  (Resp't Ex. E.)  The circuit court denied the petition, and Petitioner appealed.  *State v. Gillum*, No. CR 97-439B

---

[2]This is an abstract of the testimony at Petitioner's trial.  Respondent's exhibits are attached to docket entry #7.

3

(Crittenden Co. Cir. Ct. June 12, 2000) (Resp't Ex. F).   The Arkansas Supreme Court declined to consider the Rule 37 denial on appeal because Petitioner had failed to comply with the court's abstracting rules.  *Gillum v. State*, No. CR-00-887, 2001 WL 1521910 (Ark. Sup. Ct. Nov. 29, 2001) (Resp't Ex. G).

On January 28, 2002, Petitioner filed in the Crittenden County Circuit Court a state petition for writ of habeas corpus pursuant to Act 1780 of 2001, now codified as Ark. Code Ann. § 16-112-201 *et seq.*  (Resp't Ex. H.)  The court denied the petition.  *State v. Gillum, et al.*, No. CR 97-439 (Crittenden Co. Cir. Ct. Sept. 8, 2003) (Resp't Ex. I).   Petitioner appealed, and the Arkansas Supreme Court affirmed.  *Gillum, et al. v. State*, No. 03-1169, 2005 WL 1041163 (Ark. Sup. Ct. May 5, 2005) (Resp't Ex. J).

Petitioner now brings this federal habeas petition, as amended, advancing the following claims:

    1.    The trial court erred in denying his motion for directed verdict;

    2.    The trial court erred in not granting the motion of his co-defendant, Antonio Williams, for severance;

    3.    The trial court erred in excluding Petitioner as a witness and in requiring him to choose between not calling an alibi witness or calling the alibi witness and having her impeached by matters not admissible in evidence in the state's case;

    4.    The trial court erred in admitting evidence of prior bad acts allegedly related to Petitioner;

    5.    Trial counsel was ineffective for failing to timely and properly object to the prosecution's failure to disclose the name, address and planned testimony of witness Stanley Carter, denying Petitioner's right to compulsory process;

    6.    Trial counsel was ineffective for failing to proffer to the court and publish to the jury a statement from co-defendant Williams that was of probative value to Petitioner's absolute innocence;

7.      Trial counsel was ineffective for failing to object to the evidence offered by Officer Mainhart;

8.      Trial counsel was ineffective for failing to seek a ballistics expert;

9.      Trial counsel was ineffective for failing to object to the prosecution's failure to disclose a ballistics report prior to trial, and for failing to seek the report and a gunshot residue report;

10.     Trial counsel was ineffective for failing to timely object to a conflict of interest, in that two of the jurors were employed in the Crittenden County Courthouse;

11.     Trial counsel was ineffective for withdrawing Petitioner's motion for severance;

12.     Trial counsel was ineffective for failing to object to Petitioner's being charged with capital murder;

13.     (a) Petitioner is actually innocent of capital murder, and scientific evidence that was not available at trial proves this, in violation of his due process, equal protection, and fair trial rights; and

                (b) The prosecution withheld evidence favorable to Petitioner, denying his right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963).

Respondent asserts that the petition should be dismissed for several reasons: (1) the entire petition is barred by the one-year statute of limitations for federal habeas petitions, as set forth in 28 U.S.C. § 2244(d); (2) Grounds 5-13 are procedurally barred because Petitioner failed to first properly present them to the state courts; and (3) Grounds 2-4 do not allege violations of Petitioner's federal constitutional rights and, therefore, are not cognizable in federal habeas proceedings.[3]

---

[3]Because the petition should be dismissed for the reasons that follow, the Court need not reach Respondent's second and third arguments.

5

II.
Statute of Limitations

Section 2244(d) provides as follows:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ---

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A judgment becomes final for purposes of § 2244(d)(1)(A) upon either (1) the conclusion of all direct criminal appeals in the state system, followed by the completion or denial of certiorari proceedings before the United States Supreme Court, or (2) if certiorari is not sought, the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ.  *Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 853 (8th Cir. 2003); *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998).

In the instant case, the Arkansas Supreme Court issued its decision affirming Petitioner's conviction on June 17, 1999.  After that date, Petitioner had ninety days, or

until September 15, 1999, to file a petition for writ of certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13.3 (petition must be filed within ninety days after entry of judgment or order sought to be reviewed), 30.1 (computation of time). He chose not to do so. However, before the ninety-day period expired, he filed a Rule 37 state post-conviction petition. As stated above, the time during which a properly filed state post-conviction proceeding is pending is not counted toward any period of limitation under § 2244(d)(2). A state post-conviction application is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). A post-conviction application is pending "as long as the ordinary state collateral review process is 'in continuance,'" that is, until the application "has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). The time that a post-conviction application is "pending" includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a timely notice of appeal. *Id.* at 217, 219-21; *Evans v. Chavis*, 126 S. Ct. 846, 849 (2006); *Maghee v. Ault*, 410 F.3d 473, 475 (8th Cir. 2005).

It is undisputed that Petitioner's Rule 37 petition was timely and properly filed, as was his notice of appeal. The federal limitations period was thus tolled for the duration of the Rule 37 proceedings in the circuit court, as well as in the interval between the circuit court's denial of post-conviction relief and the filing of Petitioner's notice of appeal. The Rule 37 appellate proceedings "achieved final resolution" on November 29, 2001, when the Arkansas Supreme Court affirmed the Rule 37 denial. At this point, the limitations

period for filing a federal habeas petition began running.  Sixty days later, on January 28, 2002, Petitioner filed his state habeas petition.  The federal limitations period was tolled from the time of this filing until the state petition achieved final resolution on May 5, 2005, when the Arkansas Supreme Court affirmed.

Under the "prison mailbox rule," a federal habeas petition is deemed filed on the date on which the prisoner/petitioner delivered it to prison authorities for mailing to the court clerk.  *Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999); *see* Rule 3(d), Rules Governing § 2254 Cases in United States District Courts (2006) (inmate filing is timely if deposited in the institution's internal mailing system on or before the last day for filing).

Petitioner's application to proceed *in forma pauperis*, his § 2254 petition, and his supporting brief (docket entries #1, #2, #3), were file-stamped with the Clerk of this Court on March 17, 2006.  His *in forma pauperis* application shows that it was signed by Petitioner before a notary public on March 12, 2006.  The signature page of the habeas petition, signed by Petitioner, states that he "declare[s] ... under penalty of perjury that ... this Petition for Writ of Habeas Corpus was placed in the prison mailing system" on March 14, 2006 (docket entry #2, at 14).  The petition also includes a sworn "certificate of service" stating that he "served" a copy of the petition on the "United States District Court Eastern Division" on March 14, 2006 (*id.* at 16).  Therefore, the Court finds that Petitioner delivered his petition to prison officials for mailing no earlier than March 14, 2006.

Between the date of the Arkansas Supreme Court's decision on his Rule 37 petition (November 29, 2001) and the date he filed his state habeas petition (January 28, 2002), 60 days passed.  Between the date of the Arkansas Supreme Court's decision on his state

habeas petition (May 5, 2005) and the date he "filed" his federal petition (March 14, 2006), 313 days passed.  Therefore, the federal statute of limitations ran for 373 days, and Petitioner's federal habeas petition was filed more than one year past the date his state judgment became final.  Unless he can establish some basis for tolling or extending the limitations period, this petition must be dismissed as time-barred.

III.
28 U.S.C. § 2244(d)(1)(B)-(D)

Petitioner urges the Court to consider his federal claims, excusing any untimeliness, because he is actually innocent.  He asserts that this is proven by evidence that was not available at trial.  Specifically, he says the prosecution withheld: (1) a ballistics report which Petitioner says could have helped prove the victim was shot at close-range, (Pet'r Ex. B to docket entry #2); (2) a gunshot residue (GSR) exam sheet regarding tests performed on the victim, which Petitioner says shows the victim fired a weapon, (Pet'r Ex. E-1 to docket entry #15)[4]; and (3) jail records showing that his co-defendant, Antonio Williams, was in jail at the time of the murder, which discredits testimony by the state's chief witness that he saw Williams with Petitioner within seconds prior to the shooting, (Pet'r Ex. E-2, E-3, E-4 to docket entry #15).  Petitioner says the state produced this information at a hearing in his state habeas proceedings on July 25, 2003.  He says he raised claims regarding the new evidence in his state habeas petition, that state court proceedings regarding the petition were concluded with the Arkansas Supreme Court's decision on May 5, 2005, and

---

[4]This is also an attachment (fifth page) to Pet'r Ex. A to docket entry #2.

that his federal habeas petition was filed less than one year later.[5]  He also says that he

has no legal knowledge or training and has proceeded with the assistance of "jail house

attorneys."  (*See* docket entries #2 [at 14], #3 [at 5], #10, #11, #15, #17, #19.)

A.      28 U.S.C. § 2244(d)(1)(D): Newly Discovered Facts.

While Petitioner does not specifically invoke any of § 2244(d)(1)'s grounds for

extending the filing deadline, his assertions could be liberally construed as an argument

that the limitations period should have a delayed starting date under § 2244(d)(1)(D) due

to a factual predicate that "could [not] have been discovered earlier through the exercise

of due diligence."  The timeliness calculation under § 2244(d)(1)(D) requires "claim-by-

claim consideration," meaning that, if applicable, the provision would not make this habeas

petition timely as to *all* claims raised, but only as to the claims based solely on the newly

discovered facts.  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005).

Ground 9 asserts that Petitioner's counsel was ineffective for failing to object to the

prosecutor's failure to disclose the ballistics report before trial and for failing to seek that

report and the GSR testing results regarding the victim.  To be eligible for relief on a claim

---

[5]In his state habeas action, Petitioner alleged that, at trial, the prosecution suppressed the ballistics report and "downplayed" a GSR report showing residue on the victim's jacket, and that additional scientific testing would exonerate him by showing the victim was killed by a close-range shot from within the vehicle.  (Resp't Ex. H.)  Following an evidentiary hearing, the circuit court found that no new scientific procedures were available on the hearing date that had not been available at the time of Petitioner's trial.  (Resp't Ex. I, ¶ 3.)  Based on this finding, the Arkansas Supreme Court affirmed the circuit court's denial of relief, stating that Act 1780 was "inapplicable to scientific testing that was available to the convicted person at the time of trial."  *Gillum*, 2005 WL 1041163, at *2.  Interestingly, the GSR exam sheet regarding the victim's *hands* is not mentioned in the state habeas petition, the circuit court's order denying relief, or the Arkansas Supreme Court decision.  Any procedural default issues as to this and Petitioner's other claims regarding newly discovered facts have been bypassed in the interest of judicial economy. *Perry v. Kemna*, 356 F.3d 880, 886 (8th Cir.) (holding that while habeas petitioner's claim was probably procedurally barred, the court need not decide that issue because the claim clearly failed on the merits), *cert. denied*, 543 U.S. 1022 (2004).

of ineffective assistance of counsel, a habeas petitioner must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). It is not enough to show that the errors had "some conceivable effect"on the outcome of the proceeding because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693.

Ground 13(b) alleges that the state failed to disclose the ballistics report, the GSR exam sheet on the victim, and Williams' jail records.  Due process is violated where the prosecution has suppressed evidence favorable to an accused, if the evidence is material either to guilt or to punishment. *Brady*, 373 U.S. at 87.  The materiality standard under *Brady* is the same as the prejudice standard under *Strickland*: whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Clay v. Bowersox*, 367 F.3d 993, 1000 (8th Cir. 2004), *cert. denied*, 544 U.S. 1035 (2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Materiality is not established by the mere possibility that the withheld evidence may have influenced the jury, or where the evidence would have been only cumulative. *Clay*, 367 F.3d at 1003.

For the reasons that follow, the Court finds that neither the ballistics report, the GSR exam sheet, nor the jail records satisfy *Strickland*'s prejudice standard or *Brady*'s materiality standard.

Ground 13(a) alleges that Petitioner is "actually innocent" based on scientific evidence that was not available at trial, again referring to the ballistics report, the GSR

exam sheet and the jail records.  Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002); *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996).  Because Petitioner's *Strickland* and *Brady* claims are without merit as explained below, he has no viable actual-innocence claim based on any new evidence.

Therefore, even if given the benefit of a renewed limitations period under § 2244(d)(1)(D), Petitioner is not entitled to relief on any claims related to his "newly discovered" factual predicates.[6]

B.    Trial Proceedings.

On the day that Petitioner's trial began, November 5, 1997, the prosecutor told the court that Ronald Andrejack with the state crime lab had done ballistics testing but had not completed his report.  The prosecutor stated that, according to Andrejack, bullets removed from the victim's body were consistent with bullets being fired from a rifle as described by witnesses.  Petitioner's co-defendant's counsel objected to admission of the report or any testimony by Andrejack, and the trial court sustained the objection, stating, "Gentlemen, you may find that it's something beneficial to you.  You may not want to object.  I don't know."  Counsel reiterated his objection.  (Resp't Ex. B, at 34-36.)

During the state's case, Dr. Frank Peretti, a forensic pathologist and medical examiner with the state crime lab, testified that he performed the autopsy of the victim.  He

---

[6]Because the statute of limitations defense is not jurisdictional, the Court can proceed to the merits of these claims in the interest of judicial economy.  *See Day v. McDonough*, 126 S. Ct. 1675, 1681 (2006); *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir.), *cert. denied,* 127 S. Ct. 583 (2006).

said the victim had sustained two gunshot wounds which caused his death: one to the right upper back and one to the right forearm.  He testified that the entrance wound on the victim's back was irregular or atypical, meaning the bullet traveled through an intermediate object before striking the victim.  He said the bullet entered the upper back, then took a downward path, passing through a rib, the left lung and the heart, terminating in the victim's liver.  He said the entry wound on the victim's forearm had "the normal type hole," indicating that bullet passed through no other object.  He also said the bullet recovered from the victim's arm did not have a damage pattern consistent with having first passed through another object, but that could have been due to its having hit a bone.  He testified that, depending on the victim's arm position, the bullet could have come from either side. (Pet'r Ex. C, at 36, 39-44, 54-65.)[7]

Dr. Peretti also testified that he took specimens from the victim's clothing and from the fronts and backs of the victim's hands, then sent them to the lab's trace evidence section for gunshot residue analysis.  He said he also examined the victim's bullet wounds for gunshot residue.  He testified that no gunshot residue was found on the skin surrounding the wounds, indicating that they were not caused by close-range firing.  (*Id.* at 45- 48, 51-54.)  No questions were asked about whether gunshot residue was found on the victim's hands.  The GSR kit used by Dr. Peretti, along with a certified copy of the GSR laboratory analysis report prepared by Chantelle Bequette and dated February 21, 1997, were admitted into evidence without objection.  (*Id.* at 48, 65-66; Pet'r Ex. A to docket entry #2.)

---

[7]This is a transcript of Dr. Peretti's trial testimony, as submitted by Petitioner.  It is consistent with the abstract submitted by Respondent, (Resp't Ex. B, at 43-60.)

Bequette's report states that she received swabs possessing residues from the palm and back of each hand, along with control swabs.  The report then states: "The hand swabs from Charles Newsome [the victim] were examined for elements which are the primary components of gunshot residue.  Elements and/or levels characteristic of gunshot residue were NOT detected on any of the swabs and the results may be considered NEGATIVE.  A NEGATIVE gunshot residue test CAN NOT support the conclusion that a person did not fire a weapon."  The report also states that "residues relating to a firearm discharge" were found on the back of the victim's jacket and indicated that the jacket was the target of at least one firearm discharge at distant range.  The report states that the range estimates are "general and based solely on the type and distribution of gunpowder residues identified on the items."

A police detective testified that officers recovered twenty-six shell casings from an area near the apartment building, and bullets from the victim's vehicle, the street, a nearby residence, and a parked vehicle.  (Resp't Ex. B, at 168-84.)  Another officer testified that he observed five bullet holes in the exterior rear and driver's side of the victim's vehicle, and that the rear windshield was shattered, with at least one bullet hole.  Photographs of the damaged vehicle were introduced into evidence.  (*Id.* at 191-99.)

Sgt. Kevin Mainhart testified that he was familiar with the types of bullets and casings recovered from the scene, and he testified about the types of weapons that could have used that ammunition.  (*Id.* at 199-208.)

C.    Ballistics Report.

Here, Petitioner submits a state crime lab report from Andrejack, dated November 5, 1997, the day Petitioner's trial began.  (Pet'r Ex. B to docket entry #2.)  Presumably, the

14

report is the one discussed in the trial abstract as being prepared, and Petitioner says the prosecutor received it at some point during the three-day trial but never provided it to him or his attorney.  Nothing in the trial abstract suggests that the report was discussed again or entered into evidence.  The ballistics report describes each of the bullets, metal fragments, and cartridge cases recovered from the shooting scene.  It states that the bullet pieces recovered from the victim's liver were of a caliber class that includes bullets loaded into cartridges of the same type as nineteen of the recovered cartridges; that the bullet removed from the victim's arm was a steel core "like those used in armor piercing military bullets;" and that the remaining recovered cartridge cases were fired from the same firearm.

Petitioner argues that this report supports his argument that the victim was shot at close-range (i.e., by his passenger while shooting at others outside the vehicle),[8] rather than from a distance.  He says the report could have been used to better explain to the court and the jury the shooting and, without the report, the jury had to rely on the statements of Dr. Peretti and Sgt. Mainhart, who were not qualified ballistics experts, regarding weapons, bullet paths, and gunshot wounds.  He says that the ballistics report is a "key issue" because of Dr. Peretti's testimony that one of the victim's gunshot wounds did not come from outside the car, and also that the report could have been used to impeach Sgt. Mainhart's misleading testimony that the assault weapon he brought from home was the same type of weapon used in the shooting.  He also says the prosecutor's reason for nondisclosure was to cover up evidence of an old bullet removed from the

_____

[8]Petitioner presented testimony at trial from Carla Nolan, who testified that she heard gunfire, looked out the window and saw two cars traveling in opposite directions, and that "shots were still being fired" from at least one of the vehicles.  (Resp't Ex. B, at 215-21.)

victim's lung, showing that he had been in a previous shootout or gun battle.  (*See* docket entries #2 [at 22-26], #3 [at 5-6], #17.)

Contrary to Petitioner's assertions, Andrejack's ballistics report would have been more damaging than beneficial to his defense.  The report does little, if anything, to further his argument regarding a close-range shooting and instead connects the cartridge casings recovered near the apartment building (where Petitioner and others were seen shooting) with the bullet recovered from the victim's liver, which caused the most serious internal injuries.  Additionally, the "old bullet" referred to in the report was discussed by Dr. Peretti in his testimony.  He said he removed it during the autopsy, and that it had probably been in the victim's lung for years and had no relation to his death.  (Pet'r Ex. C, at 41-42.)

This Court's conclusion is supported by the state habeas court's findings after it reviewed Petitioner's claim that the prosecutor suppressed crime lab reports allegedly supporting a close-range shooting argument.  Following an evidentiary hearing, the state court found that the proof presented by Petitioner was "adverse to [his] position and actually would have been harmful had it ... been adduced at the time of trial."  (Resp't Ex. I, ¶ 3.)  Factual determinations made by a state court are presumed correct in a federal habeas proceeding unless the petitioner presents clear and convincing evidence rebutting the presumption of correctness.  28 U.S.C. § 2254(e)(1).  Petitioner has not met this burden.

Therefore, Petitioner has failed to demonstrate a reasonable probability that this ballistics report, even if it had been made available to him earlier, would have affected the outcome of his trial.  It cannot be the basis for a claim under either *Strickland* or *Brady*.

D.     GSR Exam Sheet on Victim's Hands.

Petitioner points to a "GSR Exam Sheet" that he says shows the victim fired a gun on the night of the shooting.  The exam sheet is one of several attachments to the copy of Bequette's "Report of Laboratory Analysis" submitted in this proceeding.  (Pet'r Ex. A to docket entry #2.)  Neither party has identified the exhibit that was actually admitted into evidence at trial, so it is unknown whether the GSR exam sheet was attached to the original report at trial.[9]  Petitioner alleges that the state failed to disclose the GSR exam sheet to him through discovery and that the trial court received the GSR exam sheet on the second day of trial but withheld it from him.  He says this denied him the right to mount a proper defense and the opportunity to confront the experts who performed the tests.  He also asserts that his counsel was ineffective for not seeking the information.  He alleges that he found out about the gunshot residue results six years later, in his state habeas proceeding.  He contends that the GSR exam sheet supports his argument that the victim was involved in a shootout with another vehicle.  (*See* docket entries #15, #17, #19.)

As stated earlier, Dr. Peretti testified at trial that he took specimens from Petitioner's hands, then forwarded them to Bequette for gunshot residue testing.  The GSR exam sheet identifies the victim (Newsome) as the contributor and references the same label and item numbers for the gunshot residue collection kit identified on Bequette's report.  On the exam sheet, the box for the control swab is marked "clean," the boxes for right backhand, right palm and left palm swabs are marked "slight," and the box for left backhand swab is marked "moderate."  In the column for results, however, the form has a negative symbol as to all areas.  The form lists specific percentages for three different substances: barium

---

[9]Petitioner does not contend that Bequette's report itself was not provided to him.

(Ba), antimony (Sb) and lead (Pb).  Two of the barium levels and all antimony levels are lower than the control swab, but the lead levels appear higher.

Bequette's report, as introduced at trial, states that she examined the victim's hand swabs and that the GSR results were negative.  Although the exam sheet appears to indicate that some sort of substance was detected on the victim's hands, Bequette's report analyzing her findings does not say that *nothing* was detected, but only that "[e]lements and/or levels characteristic of gunshot residue" were not detected.  To result in a positive gunshot residue reading, all of the various elements must be present in certain threshold amounts and in a proper ratio.  *See* James W. Harbert, *A guide to gunshot residue analysis for the criminal defense investigator/attorney* (last visited Feb. 8, 2007), http://www.jwharbert.com/gsranalysis.htm; Michele Nethercott & William C. Thompson, *Forensics*, 29 Champion 36 (June 2005).[10]  Therefore, Bequette's negative GSR results report and the GSR exam sheet are not necessarily inconsistent.

Furthermore, there may be another explanation for the presence of any gunshot residue on the victim's hands.  When gunshot residue is found on a person, it means that the person has either fired a gun, has been in close proximity to the firing of a gun, or has been in a gunshot residue environment, such as by holding his hands up while being shot, handling a recently discharged firearm, being dragged or touched by someone with residue on him, or through other environmental or occupational sources.  *See, e.g., Hodge v. State*, 965 S.W.2d 766, 770 (Ark. 1998) (testimony of Arkansas state crime lab analyst); *Webb v. State*, 938 S.W.2d 806, 809 (Ark. 1997) (same); *Dansby v. State*, 893 S.W.2d

---

[10]For example, the FBI requires a threshold antimony level of .05.  Harbert, *supra.*  According to the GSR exam sheet, the victim's antimony levels were .016 (right back hand), .013 (right palm), .000 (left back hand) and .002 (left palm).

331, 335 (Ark. 1995) (same); *Smith v. State*, 863 S.W.2d 563, 565 (Ark. 1993) (same); *Farris v. State*, 826 S.W.2d 241, 243 (Ark. 1992) (same).  Here, there was evidence of heavy gunfire, with multiple bullets penetrating the victim's vehicle.  He was shot at least twice, and some gunshot residue was detected on his clothing.

Finally, Petitioner's speculation that the GSR exam sheet shows the victim fired a gun does nothing to negate the evidence of Petitioner's guilt: the witnesses who observed Petitioner and others with weapons or shooting at the victim's car; the testimony of Dr. Peretti and the officers regarding the cause of injury to the victim and the damage to his vehicle; and the testimony that Petitioner told others about participating in the shooting.[11] Regardless of whether the victim was shooting at Petitioner or anyone else, there is sufficient evidence to support the jury's determination that Petitioner was shooting at him.

Under these circumstances, Petitioner has failed to establish a reasonable probability that, if the GSR exam sheet had been available to him or his counsel earlier, it would have changed the outcome of his trial.  It cannot be the basis for a claim under either *Strickland* or *Brady*.

E.    Williams' Jail Records.

Lastly, Petitioner points to jail records regarding Williams, one of his co-defendants, which he says could have been used to impeach state witnesses (docket entries #3 [at 5], #15, #17, #19).  Following the evidentiary hearing in his state habeas proceeding, the state court found that the jail records submitted there had been altered by Williams or someone

---

[11]One witness testified that Petitioner said he "shot [the victim's] car up," the gun had been taken care of, and the shooting was gang-related.  Another witness testified that Petitioner said he had "shot one guy, and he was probably going to prison," and that, when he got out of prison, "he was gonna shoot somebody else."  (Resp't Ex. B, at 104-05, 113-14, 116.)

on his behalf.  (Resp't Ex. I, ¶ 4.)  The Court must not disturb this factual finding, as Petitioner has not presented clear and convincing evidence to rebut its presumption of correctness.  28 U.S.C. § 2254(e)(1).  Therefore, even if he did not know about the jail records until July 2003, they cannot provide the basis for any federal habeas claims and are irrelevant to the timeliness issue.

 F. <u>28 U.S.C. § 2244(d)(1)(B) & (C)</u>.

 Other than the allegations contained in Petitioner's meritless ineffective-assistance and *Brady* claims, there is no allegation of any state-created impediment which prevented him from filing a timely habeas petition, as contemplated by § 2244(d)(1)(B).  Section 2244(d)(1)(C) is clearly inapplicable as none of his claims are based on any constitutional rights newly recognized by the United States Supreme Court.  *See In re Winship*, 397 U.S. 358 (1970) (due process clause prohibits conviction except upon proof beyond reasonable doubt of each element of charged crime); *United States v. Lane*, 474 U.S. 438 (1986) (misjoinder of criminal defendants may deny constitutional right to fair trial); *Crane v. Kentucky*, 476 U.S. 683 (1986) (Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense"); *Romano v. Oklahoma*, 512 U.S. 1 (1994) (admissibility of evidence raises constitutional question if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process"); *Taylor v. Illinois*, 484 U.S. 400 (1988) (Compulsory Process Clause of Sixth Amendment encompasses the right to present witness testimony).

 G. <u>Summary</u>.

 Except as to Grounds 9 and 13, §§ 2244(d)(1)(B), (C) and (D) do not provide Petitioner with a delayed triggering date for the federal limitations period.  If Petitioner's

claims under Grounds 9 and 13 are construed as timely because they are based on new factual predicates under § 2244(d)(1)(D), they do not entitle him to federal habeas relief because they are without merit.

IV.

Equitable Tolling

Section 2244(d)'s one-year provision is a true statute of limitations, rather than a jurisdictional bar, and is thus subject to equitable tolling in addition to the mechanisms specified in § 2244(d)(1)(B)-(D). *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000). A habeas petitioner seeking to equitably toll the federal limitations period bears the burden of establishing (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way. *Pace*, 544 U.S. at 418. Equitable tolling affords "an exceedingly narrow window of relief" and is not justified by a petitioner's *pro se* status, lack of legal knowledge or legal resources, or any confusion about or miscalculations of the federal limitations period. *Shoemate v. Norris*, 390 F.3d 595, 597-98 (8th Cir. 2004). Where a habeas petitioner has encountered "the kinds of obstacles faced by many if not most habeas petitioners," equitable tolling is inapplicable because Congress is presumed to have considered such equities in enacting the limitations period and the enumerated statutory provisions. *Jihad v. Hvass*, 267 F.3d 803, 806-07 (8th Cir. 2001).

In light of this case law, Petitioner's lack of legal knowledge and assistance does not present any basis for application of the equitable tolling doctrine.

Moreover, assuming that a viable actual-innocence claim could entitle him to equitable tolling, Petitioner's allegations are insufficient. *See Flanders v. Graves*, 299 F.3d 974, 977 (8th Cir. 2002). For such a claim to overcome a procedural obstacle, a habeas

21

petitioner must (1) support his allegations of constitutional error with new reliable evidence not presented at trial and (2) show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  New evidence does not establish actual innocence when it would merely set up conflicting testimony among witnesses and present additional matters for a jury to consider in assessing the credibility of other evidence supporting a guilty verdict.  *Moore-El v. Luebbers*, 446 F.3d 890, 902-03 (8th Cir.), *cert. denied*, 127 S. Ct. 673 (2006).

Here, there was substantial evidence against Petitioner, as set forth in this recommendation and as recited by the Arkansas Supreme Court in affirming his conviction.  *Gillum*, 992 S.W.2d at 93-96 (finding that the evidence mounted against Petitioner "was substantial and amply supports" his conviction).  The evidence now cited by Petitioner – Andrejack's ballistics report and the GSR exam sheet regarding the victim's hands – does not exculpate Petitioner, but instead would create discrepancies for the jury to resolve.  There was already evidence in the record indicating at least one of the shots may have been at close-range and that the victim and/or his passenger might have been involved in a "gun battle."   Additionally, an altered jail record regarding one of Petitioner's co-defendants would not be exculpatory as to Petitioner and, in any event, does not constitute "reliable" evidence that could support an actual-innocence claim.  In fact, Petitioner states that his "new" evidence would have been used for impeachment purposes and to corroborate other testimony he presented in his defense (docket entries #15, #19).  *See Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir.), *cert. denied*, 126 S. Ct. 93 (2005) (witness recantation did not show actual innocence where it "would only serve to potentially impeach the credibility of ... eye witnesses, but it could not prove Cox did not shoot Jackson");

22

*Morris v. Dormire*, 217 F.3d 556, 559-60 (8th Cir. 2000) (no actual innocence where evidence only tended to impeach and was cumulative); *Allen v. Nix*, 55 F.3d 414, 417 (8th Cir. 1995) (exception inapplicable where evidence only tended to impeach other testimony and only indirectly supported the petitioner's version of facts).

Under these circumstances, Petitioner has not demonstrated a viable actual-innocence claim that could equitably toll the federal habeas limitations period.

V.
Conclusion

In summary, with the exception of Grounds 9 and 13, Petitioner's federal habeas claims clearly are untimely, and he has not demonstrated that the one-year limitations period should be tolled or extended under any statutory or equitable principles.  If Petitioner's claims in Grounds 9 and 13 are construed as timely under § 2244(d)(1)(D) due to newly discovered factual predicates, they should be dismissed as without merit, as set forth above.

Accordingly, Respondent's motions to dismiss (docket entries #7, #16) should be **granted**, and this 28 U.S.C. § 2254 petition for writ of habeas corpus as amended (docket entries #2, #15) should be **dismissed** in its entirety with prejudice.  Petitioner's motion "to authenticate the record" (docket entry #18) should be **denied** as moot.

DATED this 12th day of February, 2007.

_____
UNITED STATES MAGISTRATE JUDGE